[S. F. No. 6168. Department Two.—November 25, 1913.]

## A. BENENATO, Appellant, v. C. C. McDOUGALL et al., Respondents.

ARCHITECTS—PREPARATION OF PLANS—MISTAKE IN ESTIMATE OF COST—
LIABILITY IN DAMAGES.—An architect who skillfully draws plans for the alteration of a building cannot be held liable in damages because the plans involve an expense of construction beyond his estimate, when the owner, before the commencement of the work, has means of knowing and sufficient notice to apprise a prudent man of the fact that the work cannot be done for the estimated sum. If the owner, with such knowledge and notice, proceeds with the work, the mistaken estimate of the architect cannot be regarded

as the proximate cause of his loss by being compelled to surrender his lease because he lacks financial ability to complete the work.

ID.—ESTIMATE OF COST BY ARCHITECT—RIGHT OF OWNER OF BUILDING TO RELY ON.—One to whom an architect gives an estimate of cost for the alteration of a building may not recklessly proceed to make contracts which may and probably will make the cost of construction far above that estimated, and then hold the architect responsible for the surplus expenditure.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto, for Appellant.

Hiram W. Johnson, and Percy E. Towne, for Respondents.

MELVIN, J.—Plaintiff appeals from a judgment of nonsuit and from an order denying his motion for a new trial.

The defendants are architects who were employed by plaintiff to draw plans for the raising and alteration of a certain building of which plaintiff was lessee and upon which he was bound under the terms of the lease to expend at least seven thousand dollars. Damages were sought for the alleged negligence of defendants. It is averred in the complaint that defendants were employed by plaintiff to prepare the plans and specifications and that they promised plaintiff such plans as would provide for a building to cost less than seven thousand dollars; that they were instructed to keep the cost below seven thousand dollars, as that was all the money plaintiff had for the purpose of raising and altering the building. The averment in regard to the damages is as follows:

"Plaintiff alleges that defendants, disregarding the specific instructions given to them as aforesaid, carelessly and negligently drafted the plans and specifications by providing in said plans and specifications the most expensive lumber and hardware for the stores and flats into which the existing building was to be altered and improved, as well as calling for greater and more elaborate alterations and improvements than were necessary and proper considering the amount to be expended, and providing for an elaborate finish of the same, and

defendants, at the time of the delivery of said plans and specifications to plaintiff and at all the times mentioned herein, well knew that the cost of the alterations and improvements on the existing building on the property leased, in accordance with the said plans and specifications drafted and presented to plaintiff by defendants, would exceed the sum of sixteen thousand ($16,000) dollars.''

While the plaintiff and his agent Coleman both testified that one of the defendants gave them assurance of a maximum cost of less than seven thousand dollars, there was no allegation nor proof that the architects had any control of the letting of contracts. There was no pretense that the plans were not skillfully drawn, but the gist of the action seems to be that they involved an expense of construction beyond the estimate of the architects. If the defendants had entered into a contract to plan and construct the improvements at a given figure there might be some basis for this suit, but such is not the pleading nor the proof. Plaintiff testified that he visited two contractors, each of whom declined to take a contract to do the work for seven thousand dollars. He then visited Farnsworth & Marish, who refused to make a contract to do the work for any specific amount.. However, he entered into an agreement with them to do a large proportion of the work on a percentage basis. Other contracts were made for various parts of the work, but in no case were the architects consulted, plaintiff and Coleman having charge of all agreements and money matters relating to the building. No contract of warranty, express or implied, was pleaded or sought to be proved, the whole theory of plaintiff being that the drawing of the plans requiring expensive constructive work amounted to negligence. This theory was not sustained by the evidence. No bids were called for, but the plaintiff took the whole matter of construction into his own hands. He was told by contractors that building conditions were such as to make it practically impossible to estimate with any degree of accuracy the cost of construction. Under the circumstances we cannot see that the mistaken estimate of the architects was the proximate cause of the loss sustained by plaintiff in being compelled to surrender his lease because he lacked financial ability to complete the work. Before the work commenced he had means of knowing and sufficient notice to apprise a prudent man

of the fact that he could not complete the work for the sum of money which he had intended to invest. Section 19 of the Civil Code provides that, "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." One to whom an architect gives an estimate of cost may not recklessly proceed, as did this plaintiff, to make contracts which may and probably would make the cost of construction far above that estimated and then hold the architect responsible for the surplus expenditure.

Appellant cites many authorities which hold that an architect by every contract implies his possession of skill and ability and a promise to exercise them reasonably and without neglect. That is unquestionably the rule, but the fault charged here is not lack of architectural ability, but negligence in estimating probable cost. It is suggested that *Columbus Co.* v. *Clowes,* L. R. 1 K. B. (1903) 247, is similar in principle to the case at bar, but we fail to note any resemblance. In that case the architect took some one's word for the dimensions of the site which was to be covered by the building, carelessly refraining from taking actual measurements. His plan was therefore too small for the area to be covered. Nominal damages were allowed, as plaintiffs, having been unable to use any plans, owing to financial difficulty, never did construct any building on the real property which they had leased for that purpose.

We are of the opinion that the nonsuit was properly granted. The judgment and order are therefore affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.